**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

| | | |
|---|---|---|
| REBECCA G. COOK, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 2:15-07181 |
| | ) | |
| CAROLYN. W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| Defendant. | ) | |

**PROPOSED FINDINGS AND RECOMMENDATION**

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Plaintiff's application for Disability Insurance Benefits (DIB), under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. By Standing Orders entered June 4, 2015, and January 5, 2016 (Document Nos. 3 and 10.), this case was referred to the undersigned United States Magistrate Judge to consider the pleadings and evidence, and to submit Proposed Findings of Fact and Recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the Court are the parties' cross-Motions for Judgment on the Pleadings. (Document Nos. 8 and 9.)

The Plaintiff, Rebecca G. Cook (hereinafter referred to as "Claimant"), filed an application for DIB on September 27, 2011 (protective filing date), alleging disability as of September 20, 2010, due to fibromyalgia, Sjogren's syndrome, panic attacks, high blood pressure, anxiety, and lichen planus of mouth.[1] (Tr. at 11, 132-34, 146, 149.) The claim was denied initially and upon reconsideration. (Tr. at 11, 65-68, 69-71, 75-77, 79-81.) On July 25, 2012, Claimant requested a hearing before an Administrative Law Judge (ALJ). (Tr. at 11, 82-83.) A hearing was held on

---

[1] On her form Disability Report – Appeal, dated July 26, 2012, Claimant alleged that experienced increased pain from her fibromyalgia. (Tr. at 11, 187.)

September 13, 2013, before the Honorable Stanley Petraschuk. (Tr. at 11, 29-64.) By decision dated December 5, 2013, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 11-24.) The ALJ's decision became the final decision of the Commissioner on April 13, 2015, when the Appeals Council denied Claimant's request for review. (Tr. at 1-6.) Claimant filed the present action seeking judicial review of the administrative decision on June 3, 2015, pursuant to 42 U.S.C. § 405(g). (Document No. 1.)

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(I), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2014). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the

2

Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience.   20 C.F.R. §§ 404.1520(f), 416.920(f) (2013). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because she had not engaged in substantial gainful activity since the amended alleged onset date, September 20, 2010. (Tr. at 13, Finding No. 2.) Under the second inquiry, the ALJ found that Claimant suffered from "Sjogren's syndrome, fibromyalgia, and obesity," which were severe impairments. (Tr. at 13, Finding No. 3.) At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 18, Finding No. 4.) The ALJ then found that Claimant had the residual functional capacity for medium work, as follows:

> [C]laimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except she has the capacity for work-like activity commensurate with her educational level in a work environment that can accommodate her physical limitations.

(Tr. at 19, Finding No. 5.) At step four, the ALJ found that Claimant was able to perform her past relevant work as a medical assistant. (Tr. at 24, Finding No. 6.) On this basis, benefits were denied. (Tr. at 24, Finding No. 7.)

Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In <u>Blalock v. Richardson</u>, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

<u>Blalock v. Richardson</u>, 483 F.2d 773, 776 (4th Cir. 1972) (quoting <u>Laws v. Celebrezze</u>, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. <u>Hays v. Sullivan</u>, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." <u>Oppenheim v. Finch</u>, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

Claimant's Background

Claimant was born on March 18, 1954, and was 59 years old at the time of the administrative hearing on September 13, 2013. (Tr. at 33, 35, 132.) Claimant had at least a high school education and was able to communicate in English. (Tr. at 36, 148.) In the past, she worked as a medical assistant. (Tr. at 21, 58, 165, 180-87.)

 The Medical Record

The Court has considered all evidence of record, including the medical evidence and will summarize it and discuss it below in relation to Claimant's arguments.

On April 1, 2009, Claimant presented to Dr. B. Asher Louden, M.D., for lichen planus, which Dr. Louden found had resolved with Lidex Gel. (Tr. at 208.) Dr. Richard Newhart, D.D.S., subsequently noted that despite the lichens planus of the bilateral cheeks, there was no decay. (Tr. at 213-14, 216, 332-36, 337-39.) He continued to note normal soft tissue exams and a dry mouth. (Tr. at 264-65, 334-36.)

The record contains treatment notes from David T. Cramer, M.D., from May 17, 2010, through June 22, 2011. (Tr. at 222-61.) On May 17, 2010, Claimant presented for follow-up of moderate hypertension and complained of visual disturbance of sudden onset, wherein she saw blue and yellow zig zags in the right eye, and knee stiffness. (Tr. at 227.) Dr. Cramer assessed visual defect, hypertension, anxiety, allergic rhinitis, and Sjogren's syndrome. (Tr. at 228.) He prescribed Effexor and Xanax for the anxiety and screened for lipoid disorders. (Id.)

On August 19, 2010, Dr. Cramer evaluated Claimant for hyperhidrosis. (Tr. at 244-45.) Claimant reported a history of facial flushing, hot intolerance, and excessive sweats. (Tr. at 244.) She indicated that she always felt "hot and sweaty" and was "cool to touch and clammy," but felt burning inside. (Id.) Claimant also reported that her hypertension was controlled with Lisinopril. (Id.) Claimant also reported anxiety, but Dr. Cramer observed that her mood and energy were good. (Tr. at 245.) He further observed that her skin was warm and dry and that she had normal muscle strength, reflexes and gait. (Id.) He assessed hyperhidrosis of unknown etiology and well-controlled hypertension. (Id.)

On June 18, 2011, Claimant presented to the emergency department at St. Joseph's Hospital, with swelling around the neck. (Tr. at 219-20.) A CT scan of Claimant's neck revealed an enlargement of both parotid glands with some inflammation and edema, which was suggestive of parotiditis. (Tr. at 221, 241.) Claimant also had small, non-enlarged lymph nodes, with no

significant cervical lymphadenopathy; and several tiny granulomas in the upper lobes. (Id.)

She followed-up with Dr. Cramer on June 22, 2011, at which time she reported that her facial pain/parotiditis had improved with Toradol and Zithromax, and that she felt better. (Tr. at 224.) Claimant denied any fatigue or weakness, but reported knee stiffness. (Id.) Dr. Cramer observed that Claimant's parotid glands were tender and swollen and that her mouth was dry. (Id.) He recommended that Claimant follow up with Dr. Brar for Sjogren's Syndrome and ordered a complete parotidectomy. (Tr. at 225.)

Claimant presented to Dr. G.S. Brar, M.D., on June 29, 2011, for follow-up from her last appointment on July 24, 2008, for Primary Sjogren's Syndrome. (Tr. at 262, 364.) Dr. Brar noted that Claimant was doing fairly well since his last visit. (Id.) He noted Claimant's symptoms included moderately dry eyes, moderately severe dry mouth, and swelling of the parotid glands. (Id.) Dr. Brar found no significant change from the last visit, except for moderate dryness of the eyes and the absence of a salivary pool under the tongue. (Id.) He assessed Sjogren's Syndrome, primary interphalangeal osteoarthritis, depression, and hypertension. (Id.) Dr. Brar prescribed Hydroxychloroquin and recommended ocular follow-up every six months, for the Sjogren's Syndrome. (Id.)

On February 13, 2012, Dr. Rakesh Wahi, M.D., performed a consultative physical examination, at the request of the West Virginia Disability Determination Service. (Tr. at 267-74.) Claimant reported that she had been diagnosed with lichen planus approximately seven to eight years ago, which was treated with mouth washes and steroids applied locally. (Tr. at 267.) She also reported that she was diagnosed with Sjogren's Syndrome seven years ago. (Id.) Claimant reported aches and pains all over her body and was diagnosed with fibromyalgia. (Id.) She indicated that she was able to sit, stand, or walk only ten to 15 minutes at a time due to stiffness

and pain and that the pain all over her body prevented her from doing any strenuous work. (Id.) Claimant reported that she easily was fatigued, which interfered with her ability to work, but did not interfere with her daily activities. (Tr. at 267-68.) Claimant did some housework, little cooking, and drove only short distances due to fatigue. (Tr. at 268.) Claimant further reported frequent panic attacks, that were accompanied by shortness of breath and chest pain. (Id.) Diagnostic testing, including an echocardiograph and stress test, was normal. (Id.)

Physical examination revealed that Claimant was alert, oriented, and cooperative; was moderately obese; had no obvious skin lesion; had a normal gait; was able to get on and off the exam tables without difficulty; declined to squat due to pain; was able to walk on her toes, but not heels; had normal sensation and reflexes; had normal range of motion of all extremities, although she had considerable pain in the hip area; had normal muscle strength in the lower extremities; had normal grip strength bilaterally; and had intact fine manipulation. (Tr. at 269-70.) Claimant had some decreased range of cervical spine motion and normal straight leg raising test bilaterally, with considerable hip pain. (Tr. at 270.) Dr. Wahi assess poorly controlled hypertension, Sjogren syndrome, fibromyalgia, and panic attacks. (Id.) Dr. Wahi opined that Claimant's biggest limitation was caused by significant fatigue, which prevented her from doing any sustained activity. (Id.)

On February 21, 2012, Dr. Porfirio Pascasio, M.D., a State agency reviewing physician, completed a form Physical RFC Assessment, on which he opined that Claimant was able to perform a full range of medium exertional level work. (Tr. at 275-82.) Dr. Thomas Lauderman, D.O., a state agency reviewing physician, affirmed Dr. Pascasio's opinion on June 23, 2012. (Tr. at 611.)

*Mental Impairments*:

On February 24, 2012, Brenda Tebay, M.A., a licensed psychologist, conducted a consultative mental status examination. (Tr. at 284-89.) Ms. Tebay noted that Claimant drove herself to the evaluation. (Tr. at 284.) Claimant reported panic attacks and feelings of sadness, helplessness, and hopelessness. (Tr. at 285.) Ms. Tebay noted that Claimant was not under the care of any psychiatrist or psychologist. (Id.) Claimant reported that on good days, she kept her house clean and on bad days, she did well to get out of bed. (Id.) Mental status examination revealed that she was cooperative and oriented; exhibited clear and coherent speech; was tearful; had a flat affect and sad mood; denied suicidal or homicidal ideations; maintained relevant, logical, and adequately organized thought process; had full insight; had normal judgment, concentration, and immediate and remote memory; and had moderately deficient recent memory and social functioning. (Tr. at 285-86.) Ms. Tebay diagnosed panic disorder without agoraphobia; major depressive disorder, moderate, recurrent; and pain disorder associated with psychological factors and a general medical condition. (Tr. at 286.) She opined that Claimant's prognosis was poor, but that she was capable of managing her finances. (Tr. at 286-87.)

On March 6, 2012, Philip E. Comer, Ph.D., a State agency psychological consultant, completed a form Psychiatric Review Technique, on which he opined that Claimant's affective, anxiety-related, and somatoform disorders resulted in mild limitations of daily activities; moderate difficulties in maintaining social functioning, concentration, persistence, or pace; and one or two episodes of decompensation of extended duration. (Tr. at 295-308.) Dr. Comer also completed a form Mental RFC Assessment, on which he opined that Claimant had moderate limitations in her ability to maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; complete a

8

normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; interact appropriately with the general public; and respond appropriately to changes in the work setting. (Tr. at 290-91.) Dr. Comer opined that Claimant's mental/emotional capacity for work-like activity was commensurate with her educational level in a work environment that tolerated her physical limitations. (Tr. at 292.) On June 19, 2012, Dr. Joseph A. Shaver, Ph.D., a State agency psychological consultant, affirmed Dr. Comer's assessment, as written. (Tr. at 309.)

On June 28, 2012, Claimant initiated counseling with Mollie Haught, LPC, a counselor at the Counseling and Wellness Center. (Tr. at 315-17.) Claimant reported that her life had been "a series of crises" and that she was "in ill health and is a difficult patient." (Tr. at 315.) Ms. Haught noted that Claimant had a difficult time with medication, in general. (Id.) She reported extreme depression after quitting her job due to health concerns and panic attacks that caused her throat to close and swallowing difficult. (Id.) Ms. Haught assessed a GAF of 50. (Id.) On July 6, 2012, Claimant complained of having to care for her 80-year-old mother, who was a hypochondriac with bipolar disorder and was schizophrenic. (Tr. at 314.) Claimant also complained that she had been sitting with her mother once a week and harbored anger and resentment towards her. (Id.) She stated that her mother ruled her with guilt. (Id.) On July 30, 2012, Claimant reported that she felt guilty for having not seen her mother as much. (Tr. at 313.)

On August 14, 2012, Claimant stated that her mother discussed her father and implied that he did not love her. (Tr. at 347.) She further stated that her mother never was very "motherly" towards her. (Id.) On September 6, 2012, Claimant reported having had a panic attack prior to a dental appointment. (Tr. at 346.) She reported on October 23, 2012, after she discussed her father with her mother, she again experienced intense anger upon smelling certain odors. (Tr. at 345.) On

9

November 27, 2012, Ms. Haught encouraged Claimant to take a class to prove to herself that she could do it. (Tr. at 344.) On January 17, 2013, Claimant reported that she had been violently ill twice, and Ms. Haught noted that she showed concern, which had not been seen before. (Tr. at 343.) Claimant reported on April 3, 2013, that she had been depressed due to a neighbor having died of colon cancer, her mother fell, and her husband was ill. (Tr. at 342.) Ms. Haught noted on July 31, 2013, that Claimant was much worse and experienced increased depression.[2] (Tr. at 340.) On August 26, 2013, Claimant reported continued depression resulting from issues with her daughter. (Tr. at 373.)

Claimant's Challenges to the Commissioner's Decision

Claimant alleges that the Commissioner's decision is not supported by substantial evidence because the ALJ erred in finding that her mental impairments were not severe impairments at step two of the sequential analysis. (Document No. 8 at 6-10.) Claimant asserts that in finding only mild limitations in functioning, the ALJ erred in rejecting the findings and observations of Ms. Tebay; giving little weight to the State agency opinions of moderate limitations in maintaining social functioning, concentration, persistence, or pace; and rejecting the GAF scores of Ms. Haught. (Id. at 8.) Claimant contends that in finding her mental impairments were non-severe, the ALJ "rejected *every psychological opinion in the record*." (Id.) Claimant also contends that the ALJ erred in evaluating the medical opinions of record. (Id. at 10-12.) Specifically, she contends that although Ms. Tebay was the only medical source of record to have performed a consultative psychological evaluation, the ALJ failed to assign any weight to her opinions and summarily rejected them in their entirety. (Id. at 11.) She further asserts that the ALJ gave partial weight and

---

[2] From June 28, 2012, through July 31, 2013, Ms. Haught consistently assessed GAF scores ranging from 50 to 55, which indicated only moderate symptoms. (Tr. at 313-15, 340-47.)

little weight to the two non-examining State agency medical consultants' opinions of moderate limitations in concentration, persistence, or pace, and then gave Dr. Comer's opinion significant weight as being consistent with a finding of no severe mental impairment. (Id.) Despite giving Dr. Comer's opinion significant weight, the ALJ failed to adopt any of his limitations in his RFC assessment. (Id. at 12.) Accordingly, Claimant contends that the ALJ failed to comply with the controlling Regulations and Rulings in assessing the opinion evidence of record.

In response, the Commissioner asserts that the ALJ's finding of non-severe mental impairments is supported by the substantial evidence of record. (Document No. 9 at 9-17.) In making this determination, the Commissioner contends that the substantial evidence supports the ALJ's finding of mild limitations in daily activities, social functioning, concentration, persistence, and pace, and no episodes of decompensation of extended duration. (Id. at 10-13.) Regarding the opinion evidence, the Commissioner asserts that contrary to Claimant's argument, the ALJ fully considered the results of Ms. Tebay's consultative psychological evaluation, but found that although she assessed moderately deficient social functioning based on tearfulness, Claimant's mental status evaluation otherwise was within normal limits. (Id. at 14.) Ms. Tebay stated that she did not consider Claimant's social functioning outside the evaluation and noted that she made phone calls, went shopping, spent time with family and friends, interacted with family and friends on the computer, went to lunch with a friend, went to an exercise program, got along well with others, shopped for groceries, and occasionally visited her mother. (Id.) The ALJ therefore, properly declined to accept Ms. Tebay's finding of moderate limitations in social functioning. (Id. at 14-15.)

The Commissioner further asserts that the ALJ properly considered Dr. Comer's opinion and found that the moderate limitations in social functioning, concentration, persistence, and pace

were based in part on Claimant's subjective complaints and findings during the evaluation. (Id. at 15.) These findings however, were inconsistent with the evidence of record. (Id.) Furthermore, he Commissioner asserts that Dr. Comer found that despite specific limitations, Claimant was able to perform work-like activity commensurate with her educational level and physical limitations. (Id. at 16.) This limitation is not vague and is supported by her education. (Id.) Finally, the Commissioner asserts that the ALJ rejected Ms. Haught's GAF scores because there was no explanation behind the scores and because Ms. Haught was not an acceptable medical source. (Id. at 16-17.) Accordingly, the Commissioner contends that the ALJ's step two finding and the weight accorded to the opinion evidence is supported by substantial evidence. (Id. at 17.)

Claimant also alleges that the Commissioner's decision is not supported by substantial evidence because the ALJ's credibility assessment was deficient in light of her severe impairment of fibromyalgia. (Document No. 8 at 13-17.) Claimant asserts that her alleged disability was based primarily due to significant pain and fatigue that resulted from her fibromyalgia and Sjogren's syndrome. (Id. at 14.) Claimant states that she provided specific and detailed testimony regarding fatigue, pain, and limitations, but the ALJ failed to analyze her subjective allegations pursuant to the Rulings and Regulations. (Id. at 15.) She asserts that the ALJ improperly relied solely on the objective findings, weight fluctuations, and selective portions of her completed form reports without considering her testimony. (Id. at 15-16.)

In response, the Commissioner asserts that the substantial evidence of record, as a whole, supports the ALJ's decision that Claimant's subjective complaints of pain and limitation were not entirely credible. (Document No. 9 at 17-20.) The Commissioner asserts that the ALJ found that Claimant was not entirely credible because her statements were inconsistent with the fact that she did fairly well with measures for treating dry eye and mouth, they were unsupported by any

findings of trigger point test results for fibromyalgia, were unsupported by laboratory testing, were inconsistent with her August 2010, report of an absence of any joint pain and that she slept well, they were inconsistent with clinical findings, and for numerous other reasons. (Id. at 17-19.) The Commissioner contends that there is not any merit to Claimant's allegations and that the ALJ's credibility determination is consistent with the evidence of record. (Id. at 19-20.)

Analysis.

   1.  Severe Mental Impairments.

Claimant first alleges that the ALJ erred in failing to find that her mental impairments were severe impairments. (Document No. 8 at 6-10.) To be deemed disabled, a claimant must have an impairment or combination of impairments which is severe, meaning that it "significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c);   416.920(c) (2013). Basic work activities are the abilities and aptitudes necessary to do most jobs, including: physical functions such as sitting and standing; capacities for seeing, hearing and speaking; understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting. Id.; §§ 404.1521(b)(1)-(6); 416.921(b)(1)-(6). Conversely, "[a]n impairment can be considered as 'not severe' only if it is a *slight abnormality* which has such a *minimal effect* on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." Evans v. Heckler, 734 F.2d 1012, 1014 (4th Cir. 1984) (emphasis in original); see also SSR 85-28 (An impairment is considered not severe "when medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work

even if the individual's age, education, or work experience were specifically considered."); SSR 96-3p (An impairment "is considered 'not severe' if it is a slight abnormality(ies) that causes no more than minimal limitation in the individual's ability to function independently, appropriately, and effectively in an age-appropriate manner."). An inconsistency between a claimant's allegations about the severity of an impairment and the treatment sought is probative of credibility. See Mickles v. Shalala, 29 F.3d 918, 930 (4th Cir. 1994). As discussed above, the determination whether a claimant has a severe impairment is made at the second step of the sequential analysis.

In his decision, the ALJ found that Claimant's depression and panic disorders were not severe impairments. (Tr. at 14-15.) In reaching this decision, the ALJ acknowledged Claimant's testimony that she experienced crying spells, difficulty swallowing and breathing during panic attacks, depression due to inactivity, social isolation, limited concentration, feelings of being in a fog, lack of interest, feelings of guilt and shame, and difficulty getting along with the public, co-workers, and supervisors. (Id.) Despite such reports, the ALJ noted that Claimant never received any psychological treatment until April 25, 2011. (Tr. at 15.) In making the finding that Claimant's mental impairments were non-severe impairments, the ALJ followed the special technique and found that Claimant had only mild limitations in daily activities, social functioning, concentration, persistence, and pace and no episodes of decompensation. (Tr. at 16-17.)

Respecting daily activities, the ALJ relied upon Claimant's reports in her Function Report dated October 19, 2011. (Tr. at 16, 159-66.) Therein, Claimant reported that she did the cleaning that needed to be done, including ironing. (Tr. at 16, 160.) She indicated that she prepared small meals on a daily basis; fed, watered, and played with her dogs; did laundry with the help of her husband; and did not go outside very often. (Tr. at 16, 161-62.) Claimant reported that she shopped in stores and by mail, was able to pay bills and make change, read books, watched television,

14

played on the computer, and did stretching exercises. (Tr. at 16, 162-63.) On April 5, 2012, in a

further Function Report, Claimant reported that she was able to perform personal care without any

problem. (Tr. at 16, 175-82.) She further indicated that she sometimes vacuumed. (Id.)

Accordingly, the undersigned finds that the ALJ's finding of only mild limitations in daily

activities is supported by the substantial evidence of record.

With regard to social functioning, Claimant reported that she made phone calls, shopped,

spent time with family and friends, interacted with family and friends over the computer, went to

lunch with a friend, admitted to having friends, and got along with family and friends. (Tr. at 16-

17, 159-66, 175-82.) Regarding concentration, persistence, and pace, the ALJ acknowledged

Claimant's reports that she was able to read the newspaper, watch television, and use a computer.

(Tr. at 16.) Claimant was able to pay bills, count change, manage a savings account, and use a

checkbook. (Id.) Claimant admitted that she was able to finish what she started, continued to drive,

and enjoyed reading. (Id.) Accordingly, the undersigned finds that the ALJ's mild limitations in

maintaining social functioning, concentration, persistence, and pace are supported by the

substantial evidence of record. There being only mild limitations, the undersigned finds that the

ALJ's findings of only mild functional limitations resulting from Claimant's mental impairments

that the ALJ's step two finding is supported by substantial evidence.

Claimant also alleges that the ALJ erred in evaluating the medical opinions of record.

(Document No. 8 at 10-12.) Every medical opinion received by the ALJ must be considered in

accordance with the factors set forth in 20 C.F.R. §§ 404.1527(d) and 416.927(d) (2013). These

factors include: (1) length of the treatment relationship and frequency of evaluation, (2) nature and

extent of the treatment relationship, (3) supportability, (4) consistency, (5) specialization, and (6)

various other factors. Additionally, the Regulations state that the Commissioner "will always give

15

good reasons in our notice of determination or decision for the weight we give your treating source's opinion." Id. §§ 404.1527(d)(2) and 416.927(d)(2).

Under §§ 404.1527(d)(1) and 416.927(d)(1), more weight is given to an examiner than to a non-examiner. Sections 404.1527(d)(2) and 416.927(d)(2) provide that more weight will be given to treating sources than to examining sources (and, of course, than to non-examining sources). Sections 404.1527(d)(2)(I) and 416.927(d)(2)(I) state that the longer a treating source treats a claimant, the more weight the source's opinion will be given. Under §§ 404.1527(d)(2)(ii) and 416.927(d)(2)(ii), the more knowledge a treating source has about a claimant's impairment, the more weight will be given to the source's opinion. Sections 404.1527(d)(3), (4) and (5) and 416.927(d)(3), (4), and (5) add the factors of supportability (the more evidence, especially medical signs and laboratory findings, in support of an opinion, the more weight will be given), consistency (the more consistent an opinion is with the evidence as a whole, the more weight will be given), and specialization (more weight given to an opinion by a specialist about issues in his/her area of specialty). Unless the ALJ gives controlling weight to a treating source's opinion, the ALJ must explain in the decision the weight given to the opinions of state agency medical or psychological consultants. 20 C.F.R. §§ 404.1527(f)(2)(ii) and 416.927(f)(2)(ii) (2013). The ALJ, however, is not bound by any findings made by state agency medical or psychological consultants and the ultimate determination of disability is reserved to the ALJ. Id. §§ 404.1527(f)(2)(I) and 416.927(f)(2)(I).

Respecting Ms. Tebay, the ALJ fully summarized the report of her consultative evaluation, including her opinions that Claimant had moderately deficient social functioning. (Tr. at 15.) The ALJ noted however, that Ms. Tebay's opinion was based solely on Claimant's subjective reports

and disposition at the evaluation. (Id.) The ALJ noted specifically that claimant cried throughout the evaluation and was sad. (Id.) Otherwise, with the exception of moderately deficient recent memory, Claimant's mental status examination essentially was normal. (Id.) The ALJ explained that Ms. Tebay did not consider Claimant's social functioning outside the evaluation setting. (Tr. at 17.) Accordingly, as the ALJ noted, Claimant's reported activities were inconsistent with moderate deficiencies based solely upon the evaluation. The undersigned finds that the ALJ fully considered Ms. Tebay's assessment and that his decision not to adopt her moderate limitations in social functioning is supported by the substantial evidence of record.

Regarding the State agency opinions, the ALJ gave significant weight to the opinions contained in Dr. Comer's mental RFC assessment, but gave only partial weight to his findings of mild limitations in daily activities; moderate limitations in maintaining social functioning, concentration, persistence, and pace; and one or two episodes of decompensation. (Tr. at 17-18.) The ALJ found that Dr. Comer's opinion as to these "B" criteria, was not supported by the evidence of record. Specifically, the ALJ found that Dr. Comer's opinion was based on Claimant's subjective allegations and Ms. Tebay's evaluation, both of which were inconsistent with the evidence of record. (Id.) A finding of no severe mental impairment was consistent with Claimant's daily activities and sparse psychological treatment record. (Tr. at 18.) Although Dr. Comer found that Claimant had further limitations, he opined that despite those limitations, she retained the mental capacity to perform work-like activity commensurate with her educational level. Dr. Shaver affirmed Dr. Comer's opinion. Based on the foregoing findings, the undersigned finds that the ALJ's decision to give only partial weight to the "B" criteria as assessed by Drs. Comer and Shaver is supported by the substantial evidence of record.

Finally, the undersigned finds that contrary to Claimant's allegations, the ALJ rejected Ms.

Haught's GAF scores because she failed to provide any explanation for the scores. (Tr. at 18.) Furthermore, the ALJ noted that GAF scores were subjective and inconsistent with Claimant's daily activities and education. The substantial evidence supports the ALJ's rejection of the GAF scores as they were based entirely on subjective reports and were inconsistent with her education and activities.

In view of the foregoing, the undersigned finds that the ALJ's step two decision and the ALJ's assessment of the opinion evidence of record is supported by substantial evidence.

2. <u>Credibility Assessment</u>.

Claimant also alleges that the ALJ erred in assessing her credibility. (Document No. 8 at 13-17.) A two-step process is used to evaluate a claimant's statements and to determine whether a claimant is disabled by pain or other symptoms. First, objective medical evidence must show the existence of a medical impairment that reasonably could be expected to produce the pain or symptoms alleged.  20 C.F.R. §§ 404.1529(b) and 416.929(b) (2013); SSR 96-7p; <u>See also</u>, <u>Craig v. Chater</u>, 76 F.3d 585, 594 (4th Cir. 1996).   If such an impairment is established, then the intensity and persistence of the pain or symptoms and the extent to which they affect a claimant's ability to work must be evaluated.  <u>Craig</u>, 76 F.3d at 595.   When a claimant proves the existence of a medical condition that could cause the alleged pain or symptoms, "the claimant's subjective complaints [of pain] must be considered by the Secretary, and these complaints may not be rejected merely because the severity of pain cannot be proved by objective medical evidence." <u>Mickles v. Shalala</u>, 29 F.3d 918, 919 (4th Cir. 1994). Objective medical evidence of pain should be gathered and considered, but the absence of such evidence is not determinative. <u>Hyatt v. Sullivan</u>, 899 F.2d 329, 337 (4th Cir. 1990). A claimant's symptoms, including pain, are considered to diminish her capacity to work to the extent that alleged functional limitations reasonably are consistent with objective medical and other evidence.  20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4) (2013). Additionally, the Regulations provide that:

[w]e will consider all of the evidence presented, including information about your prior work record, your statements about your symptoms, evidence submitted by your treating, examining, or consulting physician or psychologist, and observations by our employees and other persons.  . . .  Factors relevant to your symptoms, such as pain, which we will consider include:

(i) Your daily activities;

(ii) The location, duration, frequency, and intensity of your pain or other symptoms.

(iii) Precipitating and aggravating factors;

(iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;

(v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;

(vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 or 20 minutes every hour, sleeping on a board, etc.); and

(vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3) (2013).

SSR 96-7p repeats the two-step regulatory provisions:

First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques--that could reasonably be expected to produce the individual's pain or other symptoms. * * * If there is no medically determinable physical or mental impairment(s), or if there is a medically determinable physical or mental impairment(s) but the impairment(s) could not reasonably be expected to produce the individual's pain or other symptoms, the symptoms cannot be found to affect the individual's ability to do basic work activities.

Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's pain or other symptoms has been shown, the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities.  For this purpose, whenever the individual's statements about the intensity, persistence, or functionally limiting effects

of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.

SSR 96-7p, 1996 WL 374186 (July 2, 1996). SSR 96-7p specifically requires consideration of the "type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms" in assessing the credibility of an individual's statements. Significantly, SSR 96-7p requires the adjudicator to engage in the credibility assessment as early as step two in the sequential analysis; i.e., the ALJ must consider the impact of the symptoms on a claimant's ability to function along with the objective medical and other evidence in determining whether the claimant's impairment is "severe" within the meaning of the Regulations.  A "severe" impairment is one which significantly limits the physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c) and 416.920(c).

Craig and SSR 96-7p provide that although an ALJ may look for objective medical evidence of an underlying impairment capable of causing the type of pain alleged, the ALJ is not to reject a claimant's allegations solely because there is no objective medical evidence of the pain itself. Craig, 76 F.3d at 585, 594; SSR 96-7p ("the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record"). For example, the allegations of a person who has a condition capable of causing pain may not be rejected simply because there is no evidence of "reduced joint motion, muscle spasms, deteriorating tissues [or] redness" to corroborate the extent of the pain. Id. at 595. Nevertheless, Craig does not prevent an ALJ from considering the lack of objective evidence of the pain or the lack of other corroborating evidence as factors in her decision. The only analysis which Craig prohibits is one in which the ALJ rejects allegations of pain solely because the pain itself is not supported by objective medical evidence.

In Hines v. Barnhart, the Fourth Circuit stated that

Although a claimant's allegations about her pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment and the extent to which that

20

impairment can reasonably be expected to cause the pain the claimant alleges she suffers.

453 F.3d 559, 565 n.3 (*citing* Craig, 76 F.3d at 595).

The ALJ noted the requirements of the applicable law and Regulations with regard to assessing pain, symptoms, and credibility. (Tr. at 19-20.) The ALJ found at the first step of the analysis that Claimant's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (Tr. at 20.) Thus, the ALJ made an adequate threshold finding and proceeded to consider the intensity and persistence of Claimant's alleged symptoms and the extent to which they affected Claimant's ability to work. (Tr. at 20-24.) At the second step of the analysis, the ALJ concluded that Claimant's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." (Tr. at 20.)

In discrediting Claimant's credibility, the ALJ addressed the factors set forth in the Regulations. The ALJ first summarized Claimant's testimony, including her reports of pain and limitations. (Tr. at 19-20.) The ALJ then summarized the evidence of record, including the evidence as it pertained to Claimant's Sjogren's syndrome and fibromyalgia. (Tr. at 20-24.) Respecting the Sjogren's syndrome, the ALJ noted that Claimant's dry eyes and dry mouth essentially were controlled with medication. (Tr. at 20.) Although she developed swelling of both parotid glands, such condition essentially was treated and controlled with antibiotics and pain medication. (Id.) The ALJ acknowledged a treatment note in 2011, that indicated Claimant's condition had not changed since 2008. (Tr. at 21.) Other than dental treatments, medications, and mouth wash, Claimant had no further treatment for Sjogren's syndrome. (Id.) She was able to maintain her weight and actually gained weight despite the lichens planus typically associated with Sjogren's syndrome. (Id.) Claimant denied any problems chewing. (Id.)

Respecting fibromyalgia, the ALJ found that despite Claimant's subjective reports, the record was devoid of any finding of tender point test results or other tests confirming the diagnosis. (Tr. at

20.) Likewise, laboratory testing revealed normal sedimentation rates. (Id.) In August 2010, Claimant denied any muscle or joint pain and indicated that she slept well. (Id.) Physical examinations revealed normal muscle strength, sensation, and gait. (Id.) The ALJ noted that complaints were sporadic and not consistently indicated by the medical record. (Tr. at 21.) Despite Claimant's complaints of pain, stiffness, and fatigue, physical exams consistently revealed essentially normal findings, with full range of joint motion and strength. (Tr. at 21-22.)

      As discussed above, the ALJ also considered Claimant's daily activities, which were inconsistent with complete disability. The ALJ noted that Claimant typically took Aleve for pain complaints and never was referred to a pain clinic. (Tr. at 23.) She saw her rheumatologist on only one occasion after a three year gap in treatment and there was no indication of significant worsening of symptoms. (Id.) The ALJ therefore, found that Claimant appeared "to present as stable when her symptoms are managed appropriately and she is compliant and consistent with treatment." (Id.) The ALJ also considered the opinion evidence of record.

      Accordingly, in view of the foregoing, the undersigned finds that the ALJ properly considered the pertinent Rulings and Regulations in assessing Claimant's credibility, and that his decision is supported by the substantial evidence of record.

      For the reasons set forth above, it is hereby respectfully **PROPOSED** that the District Court confirm and accept the foregoing findings and **RECOMMENDED** that the District Court **DENY** the Plaintiff's Motion for Judgment on the Pleadings (Document No. 8.), **GRANT** the Defendant's Motion for Judgment on the Pleadings (Document No. 9.), **AFFIRM** the final decision of the Commissioner, and **DISMISS** this matter from the Court's docket.

      The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Thomas E. Johnston, United States District

Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155, 106 S.Ct. 466, 475, 88 L.Ed.2d 435 (1985), reh'g denied, 474 U.S. 1111, 106 S.Ct. 899, 88 L.Ed.2d 933 (1986); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.), cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.Ed.2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Johnston, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to send a copy of the same to counsel of record.

Date: May 25, 2016.

Omar J. Aboulhosn
United States Magistrate Judge