**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

REBECCA G. COOK,

                    Plaintiff,

v.                                  CIVIL ACTION NO.   2:15-cv-07181

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                    Defendant.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Plaintiff Rebecca G. Cook's Complaint seeking review of the final decision of the Acting Commissioner of Social Security (the "Commissioner").   (ECF No. 1.)   On June 4, 2015, this action was referred to United States Magistrate Judge R. Clarke VanDervort for submission of proposed findings and a recommendation ("PF&R").   (ECF No. 3.) On January 5, 2016, the Clerk transferred the referral of this action to United States Magistrate Judge Omar J. Aboulhosn.   (ECF No. 10.)   Magistrate Judge Aboulhosn filed his PF&R, (ECF No. 11), on May 25, 2016, recommending that this Court deny Plaintiff's request for judgment on the pleadings, (ECF No. 8), grant the Commissioner's request for judgment on the pleadings, (ECF No. 9), affirm the final decision of the Commissioner, and dismiss this matter from the Court's docket.   Plaintiff timely filed objections to the PF&R on June 8, 2016 (the "Objections"), (ECF No. 12), and the Commissioner filed a response to the Objections on June 21, 2016, (ECF No. 13).

1

For the reasons that follow, the Court **OVERRULES** the Objections, (ECF No. 12), **ADOPTS** the PF&R, (ECF No. 11), to the extent it is consistent with this Memorandum Opinion and Order, **DENIES** Plaintiff's request for judgment on the pleadings, (ECF No. 8), **GRANTS** the Commissioner's request for judgment on the pleadings, (ECF No. 9), **AFFIRMS** the final decision of the Commissioner, and **DISMISSES** this action.

## I. *Procedural Background*

The facts concerning this matter are fully set forth in the PF&R and need not be repeated here at length.   In short, Plaintiff filed an application for disability and disability insurance benefits on September 27, 2011, alleging disability as of September 20, 2010.   (ECF No. 6–5 at 5–7.)   The application was initially denied on March 12, 2012, (ECF No. 6–4 at 4–8), and upon reconsideration on a later date.[1]   A hearing was held before Administrative Law Judge Stanley Petraschuk on September 13, 2013.   (ECF No. 6–2 at 30–65.)   On December 5, 2013, the ALJ issued an unfavorable decision.[2]   (*Id*. at 12–25.)   The Appeals Council denied review of the ALJ's decision on April 13, 2015.   (*Id*. at 2–7.)   Thereafter, on June 3, 2015, Plaintiff filed her Complaint in this Court.   (ECF No. 1.)

---

[1] As it appears in the record, the notice denying Plaintiff's claim upon reconsideration does not provide a date.   (*See* ECF No. 6–4 at 10–16.)   According to the decision of the Administrative Law Judge, the claim was denied upon reconsideration on July 9, 2012.   (ECF No. 6–2 at 12.)

[2] The ALJ found at step one of the "sequential evaluation" process that Plaintiff "has not engaged in substantial gainful activity since September 20, 2010, the alleged onset date."   (ECF No. 6–2 at 14.)   At step two, the ALJ found that Plaintiff has the following severe impairments: Sjogren's syndrome, fibromyalgia, and obesity.   (*Id*. at 14–15.)   The ALJ also found that Plaintiff has the following non-severe medically determinable impairments: hypertension, elevated cholesterol, rhinitis, sinusitis, history of left ankle fracture, Vitamin D deficiency, depression, panic disorder, and pain disorder.   (*Id*. at 15.)   In determining that Plaintiff's depression, panic disorder, and pain disorder are not severe, the ALJ applied the special psychological review technique for assessing mental impairments.   (*Id*. at 15–19.) At step three of the analysis, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1."   (*Id*. at 19–20.)   The ALJ next found that Plaintiff "has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c)," subject to certain listed limitations.   (*Id*. at 20–25.)   At step four, the ALJ found that Plaintiff was "capable of performing past relevant work as a medical assistant."   (*Id*. at 25.)   The ALJ relied on the testimony of a vocational expert in making this determination.   (*Id*.)

## II.   Standard of Review

**A.   Review of the PF&R**

The Court is required to "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."   28 U.S.C. § 636(b)(1).   However, the Court is not required to review, under a de novo or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the findings or recommendations to which no objections are addressed.   *Thomas v. Arn*, 474 U.S. 140, 150 (1985).   In addition, the Court need not conduct a de novo review when a party "makes general and conclusory objections that do not direct the Court to a specific error in the magistrate's proposed findings and recommendations."   *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982).

**B.   Review of the ALJ's Findings and Decision**

"Under the Social Security Act, [a reviewing court] must uphold the factual findings of the Secretary if they are supported by substantial evidence and were reached through application of the correct legal standard."   *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (alteration in original) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."); *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987) ("A factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law.").   Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."   *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938).   "[I]t consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance."   *Mastro*, 270 F.3d at 176 (alteration in original) (quoting *Laws v.*

*Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)).   "In reviewing for substantial evidence, [the court should] not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary."   *Craig*, 76 F.3d at 589 (citing *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).   If "conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled," the Court must defer to the Commissioner's decision.   *Id.* (citing *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987)).

A plaintiff "bears the burden of proving that he is disabled within the meaning of the Social Security Act."   *English v. Shalala*, 10 F.3d 1080, 1082 (4th Cir. 1993) (citing 42 U.S.C. § 423(d)(5); *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981)).   "The term 'disability' means . . . inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ."   42 U.S.C. § 423(d)(1)(A).

The Commissioner uses a five-step "sequential evaluation" process to evaluate a disability claim.[3]   *See* 20 C.F.R. § 404.1520(a).   The claimant bears the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five.   *See Bowen v. Yuckert*, 482

---

[3] In *Hall v. Harris*, the Fourth Circuit provided the following description of the "sequential evaluation" analysis:

> Under the process the ALJ must determine in sequence: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether he has a severe impairment; (3) if so, whether that impairment meets or equals the medical criteria of Appendix 1 which warrants a finding of disability without considering vocational factors; and (4) if not, whether the impairment prevents him from performing his past relevant work.   By satisfying either step 3 or 4, the claimant establishes a prima facie case of disability.   The burden then shifts to the Secretary and leads to the fifth and final inquiry in the sequence: whether the claimant is able to perform other work considering both his remaining physical and mental capacities (defined as residual functional capacity) and his vocational capabilities (age, education, and past work experience) to adjust to a new job.

658 F.2d at 264–65; *see also* 20 C.F.R. § 404.1520 (setting forth the "sequential evaluation" analysis).

4

U.S. 137, 146 n.5 (1987).   If a decision regarding disability can be made at any step of the process, however, the inquiry ceases.   *See* 20 C.F.R. § 404.1520(a).

### III.   Discussion

Plaintiff raises two objections to the findings and recommendations in Magistrate Judge Aboulhosn's PF&R.   First, she asserts that the Magistrate Judge erred in finding that the ALJ's step two finding was supported by substantial evidence.   (ECF No. 12 at 2–7.)   Second, Plaintiff argues that Magistrate Judge Aboulhosn erred in finding that the ALJ properly evaluated the medical opinions in the record.   (*Id*. at 7–9.)   These objections are closely related and challenge the ALJ's assessment of Plaintiff's mental impairments only.

### A.   Evaluation of Non-Examining State Agency Medical Opinions

The Court addresses Plaintiff's objection with respect to the ALJ's evaluation of the medical opinion evidence first, given the centrality of that evaluation to Plaintiff's step two objection.   As will be discussed, Plaintiff's fundamental assertion is that the ALJ improperly rejected the medical opinion evidence of record and substituted his own lay opinion, resulting in a step two finding that is not supported by substantial evidence.   In particular, Plaintiff objects to the ALJ's evaluation of a medical opinion submitted by Dr. Philip Comer, a state agency psychologist who reviewed Plaintiff's file but did not examine her.   The opinion was affirmed without comment by Dr. Joseph Shaver, another non-examining state agency psychologist.

The relevant regulations "suggest a hierarchy of medical opinions, with opinions by treating physicians generally being afforded the greatest weight, followed by examining sources, and finally, nonexamining sources."   *Bevans v. Colvin*, No. 3:13–12502, 2014 WL 4925431, at *3 (S.D. W. Va. Sept. 30, 2014).   An ALJ is "not bound by the findings of state agency

psychologists," although he "must consider the findings as opinion evidence from 'highly qualified physicians and psychologists who are also experts in Social Security disability evaluation.'" *Bellamy v. Astrue*, No. 2:10CV00084, 2011 WL 3679079, at *5 (W.D. Va. Aug. 23, 2011) (quoting 20 C.F.R. § 416.927(f)(2)(i)).   Regardless of source, an ALJ must evaluate every medical opinion he receives in accordance with the following factors: (1) whether the source has examined the claimant and the length and frequency of the examinations; (2) the nature and extent of any treatment relationship; (3) the extent to which the source's opinion is supported by the medical evidence in the record; (4) the consistency of the opinion with the record as a whole; (5) whether the opinion is rendered by a specialist in his or her area of specialty; and (6) other relevant factors. 20 C.F.R. § 404.1527(c).

While an ALJ must give "good reasons" before rejecting the opinion of a treating source, *id.*, there is no such requirement for non-treating source opinions.   Nonetheless, although an ALJ's duty of explanation is lesser with respect to the opinions of a non-treating source, his explanation must "be sufficiently clear so that a court may meaningfully review [the ALJ's] weighing of the opinion." *Miller v. Colvin*, 2:13–cv–31251, 2015 WL 917772, at *18 (S.D. W. Va. Mar. 3, 2015) (citations omitted); *see also Bryant ex rel. Bryant v. Barnhart*, 63 F. App'x 90, 95 (4th Cir. 2003) ("[T]he ALJ must explain the weight accorded to non-treating sources.").   "An ALJ's determination as to the weight to be assigned to a medical opinion will generally not be disturbed absent some indication that the ALJ has dredged up specious inconsistencies, or has not given good reason for the weight afforded a particular opinion." *Koonce v. Apfel*, 166 F.3d 1209, at *2 (4th Cir. 1999) (citations omitted).

Here, Dr. Comer submitted his expert opinion following a consultative mental examination

conducted by Brenda Tebay, M.A., another state agency medical professional.   According to Ms. Tebay's notes, Plaintiff was taking Cymbalta and Xanax at the time of the examination, but was not currently in the care of any psychiatrist or psychologist.  (ECF No. 6–8 at 12.)  Plaintiff reported that she had a history of panic attacks, that at times she "feels like her brain is in falls," and that she had "some sadness, helpless[ness], and hopelessness."  (*Id*.)  Based on these self-reported symptoms, Ms. Tebay diagnosed Plaintiff with panic disorder, major depressive disorder, and a pain disorder associated with psychological factors and a general medical condition.  (*Id*. at 13.)

The results of the actual mental status examination, however, were mostly normal.  Ms. Tebay assessed Plaintiff's social functioning as moderately deficient, based solely on her "tearfulness throughout the entire evaluation," but otherwise noted calm psychomotor behavior, cooperative interpersonal behavior, relevant, logical, and adequately organized thought processes, and a lack of any suicidal or homicidal ideations.  (*Id*.)  Additionally, Plaintiff's judgment, concentration, immediate memory, and remote memory were all within normal limits.  (*Id*.)  The only moderate limitation Ms. Tebay noted, other than her conclusion regarding social functioning, was a moderate deficiency in recent memory.  Although Ms. Tebay assessed Plaintiff's general prognosis as poor, she noted that Plaintiff would be capable of managing finances related to disability benefits.  (*Id*. at 13–14.)  Ms. Tebay did not opine that Plaintiff's mental impairments would cause any work-related limitations.  As the ALJ noted, Ms. Tebay's examination generally found Plaintiff's mental status to be within normal limits.  Moreover, her prognosis with respect to social functioning was based entirely on Plaintiff's outward expression and crying during the examination, and were not based on any consideration of how she functioned outside of the

examination room. (ECF No. 6–2 at 18.) Although Plaintiff does not formally object to the ALJ's treatment of Ms. Tebay's opinion, the Court notes that subjective complaints and medical opinions based on such complaints, "standing alone, are insufficient to establish the existence of a severe impairment at step two." *Brown v. Colvin*, No. 1:12CV1081, 2015 WL 1143139 (M.D.N.C. Mar. 13, 2015) (citations omitted).

Following Ms. Tebay's examination, Dr. Comer completed a psychiatric review technique form ("PRTF"). That form indicated that Plaintiff suffered from severe mental impairments and that an assessment of Plaintiff's mental RFC was necessary. Analyzing the four functional areas identified by the special technique for reviewing mental impairments (discussed in more detail below), Dr. Comer concluded that Plaintiff's impairments caused moderate limitations in the areas of social functioning and maintaining concentration, persistence, or pace, mild limitations in daily living, and "one or two" episodes of decompensation, each of extended duration. (*Id*. at 32.) Dr. Comer's opinion does not endeavor to describe these episodes of decompensation or identify when they occurred or what they entailed.

Based on his findings on the PRTF, Dr. Comer completed a mental RFC form, in which he found no significant limitation in 15 of the 20 listed categories, including the ability to understand, remember, and carry out detailed instructions, the ability to sustain an ordinary routine without special supervision, the ability to get along with coworkers and peers without distracting them or exhibiting behavioral extremes, and the ability to set realistic goals and make plans independently of others. (*Id*. at 17–18.) In no categories did Dr. Comer find marked limitation and in only five did he find even moderate limitation: the ability to maintain attention and concentration for extended periods; the ability to perform activities within a schedule, maintain regular attendance,

8

and be punctual within customary tolerances; the ability to complete a normal work schedule without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; the ability to interact appropriately with the general public; and the ability to respond appropriately to changes in the work setting. (*Id*.)  Despite finding that Plaintiff would have some moderate limitations in her ability to carry out these basic work activities, Dr. Comer ultimately concluded that Plaintiff's mental impairments required no special accommodation.   So long as she performed work that adequately accommodated her physical limitations, she would have the capacity "for work like activity commensurate with her educational level."   (*Id*. at 19.)   As noted above, Dr. Shaver affirmed Dr. Comer's findings.   (*Id*. at 36.)

Ultimately, the ALJ assigned Dr. Comer's opinion partial weight.   To the extent that opinion suggested that Plaintiff could perform "work-like activity commensurate with her educational level," and thus imposed no non-exertional mental limitation on her ability to work, the ALJ assigned it great weight as consistent with Plaintiff's "own report of daily activities and the sparse psychological treatment record."   (ECF No. 6–2 at 19.)   To the extent the PRTF suggested moderate limitations, however, the ALJ accorded it little weight, based on its inconsistency with the evidence of record and the fact that it was largely based on "a combination of the claimant's subjective allegations and the findings on consultative psychological evaluation." (*Id*. at 18.)   As noted above, the consultative examination, conducted by Ms. Tebay, was itself based almost entirely on Plaintiff's subjective complaints and thus entitled to little independent weight, according to the ALJ.    The ALJ was thus justified in according Dr. Comer's opinion little weight to the extent it relied on Ms. Tebay's examination.   Moreover, the ALJ concluded

Plaintiff's claimed symptoms resulting from mental impairment were inconsistent with her reports of engaging in a broad array of daily activity and her sparse psychological treatment record.   As will be discussed more fully below, the record is devoid of objective evidence suggesting significant limitations resulting from any mental impairment, and the ALJ's conclusion on this point is supported by substantial evidence.

Plaintiff particularly objects to the ALJ's decision to give little weight to Dr. Comer's special technique findings, arguing that his stated reasons for not adopting all of the moderate limitations contained in that opinion were not supported by substantial evidence.   According to Plaintiff, Dr. Comer evaluated the same evidence the ALJ did, and the ALJ erred when he did not reach the same conclusion as Dr. Comer regarding the import of that evidence.   (ECF No. 12 at 8.)   The ALJ was entitled, however, to weigh the mental impairment evidence for himself, and he appropriately articulated his reasons for assigning Dr. Comer's opinion little weight to the extent it suggested the existence of moderate functional limitations.   *See Ball v. Astrue*, No. 2:09CV00019, 2010 WL 890065, at *4 (W.D. Va. Mar. 9, 2010) (noting that it "is the ALJ's responsibility to weigh evidence, including medical evidence, in order to resolve any conflicts which might appear therein," and that an ALJ "may assign no or little weight to a medical opinion" so long as she "sufficiently explains her rationale and if the record supports her findings"); *Stallings v. Colvin*, No. 4:14–CV–60–FL, 2015 WL 4480352, at *6 (E.D.N.C. July 21, 2015) (stating that an ALJ "is under no obligation to accept any medical opinion").

Dr. Comer's opinion does not cite any medical evidence in support of his findings, and his finding that Plaintiff suffered from "one or two" episodes of decompensation is particularly unsupported.   As the ALJ rightly noted, there is simply no evidence in the record to suggest that

Plaintiff had ever been hospitalized or received emergency room treatment for any psychological symptoms.   (*Id.* at 18.)   As the ALJ appropriately concluded that Dr. Comer's opinion was not supported by the record as a whole and was based largely on Plaintiff's own subjective reports, which the ALJ appropriately accorded lesser weight[4], the ALJ's weighing of Dr. Comer's opinion is supported by substantial evidence.   *See Morris v. Barnhart*, 78 F. App'x 820, 824–25 (3d Cir. 2003) (noting that "the mere memorialization of a claimant's subjective statements in a medical report does not elevate those statements to a medical opinion," and finding that an ALJ "may discredit a physician's opinion on disability that was premised largely on the claimant's own accounts of her symptoms and limitations when the claimant's complaints are properly discounted"); *Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996) (upholding ALJ's rejection of medical opinion that was inconsistent with the doctor's own treatment notes and based solely upon the claimant's subjective reports of pain, and noting that "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight"); *Woodard v. Colvin*, 1:14CV882, 2016 WL 1595387, at *4 (M.D.N.C. Apr. 20, 2016) ("Where a plaintiff's statements regarding her daily activities, medical treatment evidence, or other opinion evidence contradicts a medical opinion, the ALJ may afford the opinion less weight."), *report and recommendation adopted*, 1:14CV882, 2016 WL 3512211 (M.D.N.C. June 22, 2016).

**B.     Step Two Severity**

---

[4]  Elsewhere in his opinion, the ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not consistent with the record and not entirely credible.   (ECF No. 6–2 at 21.) Plaintiff does not challenge that credibility determination before this Court.

At step two of the "sequential evaluation" process, the ALJ determines "the medical severity" of a claimant's impairments. 20 C.F.R. § 404.1520(a)(4)(ii). An impairment or combination of impairments is not severe unless it "significantly limits [a claimant's] physical or mental ability to do basic work activities." *Id*. § 404.1520(c). "In determining whether a severe impairment exists, the Commissioner considers the 'effect' of the impairment." *Williamson v. Barnhart*, 350 F.3d 1097, 1100 (10th Cir. 2003) (quoting 20 C.F.R. § 416.920(a)). The severity determination is ultimately "a threshold question with a de minimis . . . requirement." *Felton-Miller v. Astrue*, 459 F. App'x 226, 230 (4th Cir. 2011) (citing *Bowen v. Yuckert*, 482 U.S. 137, 153–54 (1987)); *see Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) ("[T]he step-two inquiry is a de minimis screening device to dispose of groundless claims.").

When a claimant asserts a mental impairment as a basis for disability, the SSA is required to employ a "special" psychological review technique to determine severity. *See* 20 C.F.R. § 404.1520a(a) ("[W]hen we evaluate the severity of mental impairments . . . we must follow a special technique at each level of the administrative review process."). In employing that technique, the reviewing body "considers four functional areas essential to the ability to work: activities of daily living; ability to maintain social functioning; concentration, persistence, and pace in performing activities; and deterioration or decompensation in work or work-like settings." *Felton-Miller*, 459 F. App'x at 231 (citing 20 C.F.R. §§ 404.1520a and 416.920a). "The ALJ's decision must show the significant history and medical findings considered and must include a specific finding as to the degree of limitation in each of the four functional areas." *Id*.

The special technique is a "complex and highly individualized process" which must take into account all relevant evidence bearing on the claimant's mental condition, including "clinical

signs and laboratory findings, the effects of [a claimant's] symptoms, and how [a claimant's] functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication, and other treatment." 20 C.F.R. § 404.1520a(c)(1). When an ALJ employs the special technique, he begins by determining whether a claimed impairment bears sufficient evidentiary support to be considered a medically determinable impairment. *Id.* § 404.1520a(b)(1). If the impairment is deemed to be medically determinable, the next step is to assess the degree of functional limitation it creates with reference to the four functional areas listed in 20 C.F.R. § 404.1520a(c)(3) (as noted above, activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation). The ALJ then ranks the degree of limitation present in the first three functional areas on a five-point scale ranging from "none" to "extreme," and ranks the fourth area based on number of episodes. *Id.* § 404.1520a(c)(4). A ranking of either "none" or "mild" in the first three areas coupled with no episodes of decompensation will "generally" lead the SSA to "conclude that [an] impairment(s) is not severe, unless the evidence otherwise indicates that there is more than minimal limitation in [the claimant's] ability to do basic work activities." 20 C.F.R. § 404.1520a(d)(1).

A claimant bears the burden of establishing that an impairment meets the "severe" standard. *Heckler v. Campbell*, 461 U.S. 458, 460 (1983). In the context of mental impairments, a claimant "must show that her mental impairment produces more than a minimal limitation in her ability to perform *basic* mental work activities, such as understanding, carrying out, or remembering simple instructions; using judgment; responding appropriately to supervision, co-workers, and usual work situations; or dealing with changes in a routine work setting." *Bronson v. Astrue*, 530 F. Supp. 2d 1172, 1178 (D. Kan. 2008) (citing 20 C.F.R. §§ 404.1521 and 416.921).

13

In this case, the ALJ applied the special technique and determined that Plaintiff's "medically determinable mental impairments of depressive disorder, panic disorder and pain disorder, considered singly and in combination, do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore nonsevere." (ECF No. 6–2 at 17.) In particular, he found mild limitation in the activities of daily living, social functioning, and concentration, persistence, or pace, and no episodes of decompensation of extended duration. While there is evidence to support a finding to the contrary in this case, the Court finds that substantial evidence ultimately supports the ALJ's severity determination.

Although Plaintiff accuses the ALJ of "cherry-picking" the evidence in the record, an ALJ "is not required to comment in the decision on every piece of evidence in the record, and the ALJ's failure to discuss a specific piece of evidence is not an indication that the evidence was not considered." *Brewer v. Astrue*, No. 7:07–CV–24–FL, 2008 WL 4682185, at *3 (E.D.N.C. Oct. 21, 2008). In any case, the ALJ began his special technique analysis in this case by cataloguing the extent of Plaintiff's self-reported limitations, acknowledging that "she wants to be alone due to depression" and "isolates" as a result of that condition, that she has unexpected crying spells "approximately once a week," that she had weekly panic attacks lasting between 15 and 45 minutes, that she "feels like she is in a fog on most days," that she "lacks interest in most things," and that her worsening condition made her feel depressed and caused her guilt and shame about no longer being able to "carry her own weight." (ECF No. 6–2 at 15.) In addition, the ALJ noted that Plaintiff had a limited ability to focus and concentrate and that Plaintiff took longer to read things than was previously required because she had to "read everything twice." (*Id.* at 15–16.) Finally, the ALJ took note of the Plaintiff's reports of difficulty getting along with the public,

14

coworkers, and supervisors, and that in general she "does not feel good about herself."   (*Id*.)

Against that backdrop, the ALJ ultimately determined that the record before him, taken as a whole, was inconsistent with the alleged severity of Plaintiff's psychological symptoms, as reported by Plaintiff.   The ALJ focused primarily on two factors in reaching this conclusion: (1) Plaintiff's reports of engaging in varied activities of daily living; and (2) the lack of objective medical evidence in support of Plaintiff's impairments, and in particular the lack of a history of psychological treatment.

As indicated above, Plaintiff's daily activity reports and hearing testimony suggested that her mental impairments caused her some degree of limitation in conducting basic activities.   As the rest of the ALJ's opinion makes clear, however, the record on this point is not uncontroverted, and Plaintiff nonetheless described the ability to perform a variety of daily activities and engage socially.   In particular, while she stated that she could only do "one-fourth of what she used to," she expressed an ability to carry out the activities of daily living without significant limitation, including the ability to go out alone to shop, cook daily, care for her dogs, perform light household chores, and care for her personal needs.   (ECF No. 6–2 at 17.)

Moreover, while taking note of Plaintiff's statements indicating a desire to isolate based on her deteriorating physical condition, the ALJ also pointed to the significant evidence in the record demonstrating Plaintiff's ability to function socially.   This included reports of frequent phone calls to family and friends, shopping in public spaces such as the mall and grocery stores, sharing dinner and coffee with family and friends, participating in exercise programs, and celebrating Thanksgiving with her husband's parents.   (*Id*. at 18.)   Even as Plaintiff described becoming less social in order to hide the effects of her various impairments from others, she reported keeping

daily phone contact and having monthly lunches with family and friends.   (ECF No. 6–6 at 35.)   At the hearing, she testified to getting along well with her family and friends.   (ECF No. 6–2 at 52.)   With respect to concentration, persistence, or pace, the ALJ emphasized Plaintiff's proficiency in handling money, paying bills, and managing a savings account, as well as her continued reading activity and her ability to follow instructions.   (*Id*. at 18.)   The ALJ additionally highlighted the fact that her concentration was within normal limits at her consultative psychological examination with Ms. Tebay.   (*Id*.)   Finally, regarding episodes of decompensation, the ALJ noted Plaintiff's limited psychological treatment history and the absence in the record of any "evidence of hospitalizations or emergency room treatment for psychological symptoms."   (*Id*.)   Plaintiff testified at the hearing that she had never been hospitalized either for depression or anxiety.   (*Id*. at 50.)

Plaintiff's objection invites the Court to weigh the evidence regarding these daily activities differently from the ALJ and draw differing conclusions regarding the extent of Plaintiff's ability to function, but it is not this Court's role to reweigh conflicting evidence or substitute its judgment for that of the ALJ so long as "his decision is supported by substantial evidence."   *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *see also Alvarado v. Colvin*, ---F.3d---, 2016 WL 4547349, at *2 (7th Cir. Sept. 1, 2016) (noting that a reviewing court will not "decide the facts anew, reweigh evidence, or substitute [its] judgment for the ALJ's").   While the Court's evaluation of Plaintiff's daily activity reports might be different from the ALJ's were it evaluating this case in the first instance, that is not this Court's task and the ALJ's conclusion is supported by the substantial evidence documented above that Plaintiff could engage in the activities of daily living, function socially, and maintain concentration, persistence, and pace with only mild

limitation.

The ALJ's step two determination is further supported by the objective medical evidence (or lack thereof) underlying Plaintiff's mental condition.  Plaintiff's treatment records indicate that while she at times took anti-depression medication and sought medical attention for panic attacks, she did not begin seeking regular mental health counseling until June 28, 2012, nearly two years after her alleged onset date.   The ALJ highlighted the lack of psychological treatment in the record, and although such a lack of treatment standing alone might not preclude a finding of a severe mental impairment, it is certainly proper for an ALJ to "infer that the mental impairment did not cause any workplace limitations if there is a lack of medical treatment for a mental impairment."  *Lester v. Colvin*, No. 1:13CV759, 2015 WL 1458139, at *5 (M.D.N.C. Mar. 30, 2015).   Moreover, the mere fact that Plaintiff was prescribed antidepressants, like the fact that she was diagnosed with depression, is not controlling on the question of severity.  *See Hensley v. Barnhart*, 352 F.3d 353, 357 (8th Cir. 2003) (noting that fact of being prescribed antidepressants would not, standing alone, even require further inquiry from the ALJ in the form of ordering a psychological evaluation); *Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986) (noting that mere presence of a psychological disorder is not disabling unless accompanied by a showing of related functional loss).

Following her disability application, between June 28, 2012 and August 26, 2013, Plaintiff met with Molly Haught, a licensed professional counselor, twelve times.  (*See* ECF No. 6–8 at 40–45; ECF No. 6–9 at 2–9, 35.)   Importantly, Ms. Haught is not a licensed psychologist and is not recognized as a medical source as defined by the SSA.   *See* 20 C.F.R. § 404.1513(a); *Martinez v. Astrue*, 422 F. App'x 719, 726 (10th Cir. 2011) (finding that a licensed professional counselor

is not an acceptable medical source and accordingly that the ALJ committed error by treating opinion of licensed professional counselor as a treating source opinion).   Ms. Haught's treatment notes indicate that Plaintiff exhibited varying degrees of depression and anxiety, often contingent on external events such as the death of her dog, a friend's cancer diagnosis, and her relationship with her mother, but generally maintained a stable condition.   In general, her level of functioning did not change from session to session and even improved on some occasions, including on her last visit of record on August 26, 2013.   (ECF No. 6–9 at 35.)   Ms. Haught offered no opinion as to the severity of Plaintiff mental impairments or her ability to perform work activities in spite of them.

Plaintiff filed for disability benefits long before her sessions with Ms. Haught began. Although the remainder of her medical treatment records provide little description of her mental functioning, they do indicate, in very general terms, some history of treatment and panic attacks. Given this history, Plaintiff was referred to Ms. Tebay for a consultative mental status examination. As described above, Ms. Tebay and the non-examining state agency psychologists, Dr. Comer and Dr. Shaver, noted some moderate limitations in Plaintiff's ability to perform basic work activities, but based their conclusions to a large extent on Plaintiff's subjective reports of symptoms.   As further described above, the ALJ was under no obligation to credit those opinions and substantial evidence supported the ALJ's determination to give those opinions—to the extent they suggest moderate limitations—lesser weight as being based on Plaintiff's subjective complaints and inconsistent with the record as a whole.

The fact that there is technically no medical opinion in support of the ALJ's severity determination thus presents no issue given the substantial evidence in support of that determination

18

and the lack of significant medical evidence opposing it.   Especially given the absence of any treating source opinion to contradict the ALJ's conclusion, the ALJ did not improperly "substitute" his lay opinion for that of a medical professional.   This is simply not a case—as Plaintiff attempts to allege—where the ALJ rejected the uncontroverted opinion testimony of a treating source, failed to order a consultative examination, and then submitted his lay opinion in the absence of any other supporting evidence.   *See Morales v. Apfel*, 225 F.3d 310, 317–18 (3d Cir. 2000) (noting that an ALJ must consider the medical findings in support of a treating physician's medical opinion, and may not reject such an opinion based on "his or her own credibility judgments, speculation, or lay opinion"); *Grimmett v. Heckler*, 607 F. Supp. 502, 503 (S.D. W. Va. 1985) (noting that an ALJ "does not possess the competency to substitute his views for that of a trained mental professional," and that if the ALJ had reason to question a Plaintiff's impairments as reported by a treating source, he "ought to secure a consultative examination"); *Salyers v. Comm'r of Soc. Sec.*, No. 2:12CV00014, 2013 WL 4929141, at *13 (W.D. Va. Sept. 12, 2013) (noting that while an ALJ may not disregard "uncontradicted expert opinion in favor of his own opinions on a subject that he is not qualified to render," an ALJ does not improperly substitute his opinion where the medical professional's opinion was contradicted by other substantial evidence in the record).

Here, the ALJ did not improperly substitute his opinion because his severity determination was supported by, rather than in contravention of, the record.   Moreover, his opinion did not contradict the opinion of any treating source and registered only mild disagreement with the opinion of the relevant non-examining sources, disagreement based largely on divergent interpretations of subjective symptom reports.   Thus, it was the substantial evidence in support of his step two determination, and namely the lack of objective medical evidence and psychological

19

treatment as well as Plaintiff's varied reports of daily activities, that informed the ALJ's decision rather any "lay opinion."   *See Zimmer v. Colvin*, No. 15–21, 2015 WL 5178179, at *2 (W.D. Pa. Sep. 4, 2015) (upholding ALJ's decision to reject opinion of consultative state examiner, and non-examining state agency psychologist's opinion based upon it—the only medical opinions in the record—based on a lack of support in the record, and noting that the concern about an ALJ substituting his lay opinion only arises, for example, "when an ALJ inserts a limitation into an RFC, despite the fact that no medical source has opined to that limitation"); *cf. Winning v. Comm'r of Soc. Sec.*, 661 F. Supp. 2d 807, 823–24 (N.D. Ohio 2009) (finding that ALJ erred when he rejected the opinion of the claimant's treating source and did not point to substantial evidence in the record to support his contradictory opinion).   Accordingly, the Court finds that the ALJ's application of the special technique was appropriate and that his ultimate step two determination with respect to Plaintiff's mental impairments was supported by substantial evidence.

Even if the ALJ erred at step two with respect to Plaintiff's mental impairments, however, such error would be harmless in this case.   In any case involving a medical impairment severe enough to survive step two, an ALJ is required to consider all of a claimant's impairments, whether severe or non-severe, when determining RFC.   *See* 20 C.F.R. §§ 404.1545(e), 404.1523.   Thus, a "finding of a single severe impairment at step two of the sequential evaluation is enough to ensure that the fact-finder will proceed to step three."   *Brown v. Colvin*, No. 1:12CV1081, 2015 WL 1143139 (M.D.N.C. Mar. 13, 2015), at *6.   On this basis, several courts have determined step two severity error to be harmless where it did not halt the sequential evaluation process and where the ALJ went on to consider the effect of the challenged impairment at subsequent steps in that process.   *See Reices-Colon v. Astrue*, 523 F. App'x 796, 798 (2d Cir. 2013) (finding ALJ's failure

to find a claimant's mental impairments severe at step two harmless where the ALJ identified other severe impairments and went on to consider the claimant's non-severe mental impairments at subsequent steps in the analysis); *Carpenter v. Astrue*, 537 F.3d 1264, 1265–66 (10th Cir. 2008) (finding any error at step two to be harmless where "the ALJ reached the proper conclusion that [the claimant] could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence"); *Bennett v. Colvin*, No. 2:13cv189, 2014 WL 1603737, at *11 (E.D. Va. Apr. 21, 2014) (finding that "an ALJ's failure to label an impairment as severe at step two [is] harmless error as long as the ALJ discussed the evidence related to the impairment at subsequent steps in the evaluation process").

Here, the ALJ noted that his RFC determination "reflects the degree of limitation" found pursuant to his special technique analysis.   (ECF No. 6–2 at 19.)   As described above, the ALJ found only mild limitation and noted during his RFC discussion that Plaintiff treats her psychological symptoms "infrequently" "has had no significant changes in medication," "has not attempted to secure additional treatment," and "has not required any recent visits to the emergency room."   (*Id*. at 24.)   Further, although Plaintiff draws much attention to the ALJ's decision not to adopt Dr. Comer's opinion in its entirety, Dr. Comer's ultimate RFC assessment did not provide for any specific limitations resulting from Plaintiff's mental impairments.   Rather, he concluded that Plaintiff has the capacity for work-like activity commensurate with her educational level in a work environment that can accommodate her physical limitations, and the ALJ included this recommendation, in its entirety, in his RFC determination.   Thus, it is clear that the ALJ took into account Plaintiff's mental impairments when formulating his RFC.   Plaintiff does not directly challenge that RFC formulation, and the ALJ's consideration of Plaintiff's mental impairments at

that step indicates that his RFC assessment was appropriate and that any error at step two was harmless in that it did not affect the ALJ's ultimate disability determination.

*IV.*   *Conclusion*

For the reasons discussed herein, the Court **OVERRULES** the Objections, (ECF No. 12), **ADOPTS** the PF&R, (ECF No. 11), to the extent it is consistent with this Memorandum Opinion and Order, **DENIES** Plaintiff's request for judgment on the pleadings, (ECF No. 8), **GRANTS** the Commissioner's request for judgment on the pleadings, (ECF No. 9), **AFFIRMS** the final decision of the Commissioner, and **DISMISSES** this action.

**IT IS SO ORDERED.**

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:        September 29, 2016

THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE